**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| DYNAMIC DATA TECHNOLOGIES, LLC, | |
| Plaintiff, | |
| v. | Case No. 2:18-cv-00459-RWS |
| SAMSUNG ELECTRONICS CO., LTD., *et al.*, | LEAD CASE |
| Defendants. | |
| DYNAMIC DATA TECHNOLOGIES, LLC, | |
| Plaintiff, | |
| v. | Case No. 2:18-cv-00464-RWS |
| APPLE INC., | **JURY TRIAL DEMANDED** |
| Defendant. | |

<u>**APPLE INC.'S REPLY BRIEF IN SUPPORT OF ITS**</u>
<u>**MOTION TO DISMISS PLAINTIFF DYNAMIC DATA TECHNOLOGIES, LLC'S**</u>
<u>**FIRST AMENDED COMPLAINT**</u>

## <u>TABLE OF CONTENTS</u>

Introduction ...................................................................................................................................... 1

Argument .......................................................................................................................................... 1

     I.     The FAC fails to plead facts that state a claim for direct patent
            infringement ................................................................................................................ 2

            A.     Dynamic Data does not plausibly plead that the HEVC-related
                     patents are essential to the HEVC standard ................................................. 2

            B.     Dynamic Data does not plead facts supporting a plausible
                     inference that the accused products practice key limitations of the
                     asserted patents ........................................................................................... 5

     II.     The FAC fails to plead facts that state a claim for indirect infringement ................ 9

     III.     The FAC fails to plead facts that state a claim for willful infringement ............... 10

Conclusion ..................................................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Collins v. Morgan Stanley Dean Witter*,
    224 F.3d 496 (5th Cir. 2000) ...................................................................4

*Core Wireless Licensing S.A.R.L. v. Apple Inc.*,
    No. 6:14-CV-752-JRG-JDL, 2015 WL 4910427 (E.D. Tex. Aug. 14, 2015) ........................10

*Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*,
    No. 2:14-CV-911-JRG-RSP, 2015 WL 5786501 (E.D. Tex. Sept. 30, 2015)..........................9

*Diem LLC v. BigCommerce, Inc.*,
    No. 6:17-CV-186 JRG-JDL, 2017 WL 9935521 (E.D. Tex. May 11, 2017) ...........................5

*Disc Disease Sols. Inc. v. VGH Sols., Inc.*,
    888 F.3d 1256 (Fed. Cir. 2018)..............................................................1, 2

*In re Bill of Lading Transmission & Processing Sys. Patent Litig.*,
    681 F.3d 1323 (Fed. Cir. 2012).................................................................9

*Fujitsu Ltd. v. Netgear Inc.*,
    620 F.3d 1321 (Fed. Cir. 2010).................................................................3

*Lormand v. US Unwired, Inc.*,
    565 F.3d 228 (5th Cir. 2009) ..................................................................4

*U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*,
    355 F.3d 370 (5th Cir. 2004) ..................................................................4

*Sheppard v. Texas Dep't of Transp.*,
    158 F.R.D. 592 (E.D. Tex. 1994)...............................................................4

*Stockwell v. Kanan*,
    442 F. App'x 911 (5th Cir. 2011) .............................................................4

*Stragent, LLC v. BMW of N. Am., LLC*,
    No. 6:16-CV-446-RWS-KNM, 2017 WL 2821697 (E.D. Tex. Mar. 3, 2017)....................2, 5

*Stragent, LLC v. BMW of N. Am., LLC*,
    No. 6:16-CV-446-RSW, 2017 WL 2832613 (E.D. Tex. Mar. 27, 2017)………………….………2

**Other Authorities**

Rule 8 ........................................................................................................................10

Rule 12(b)(6) ............................................................................................................10

## INTRODUCTION

The sounding refrain of Dynamic Data's opposition to Apple's motion to dismiss the First Amended Complaint ("FAC") ("Motion") is that the FAC *must* satisfy the *Twombly/Iqbal* pleading standard due to its sheer volume.  *See, e.g.*, Resp. [Dkt. 26] at 1 ("152-page FAC"); 4 ("84 pages of additional detailed analysis"); 5 ("allegations for [Count I] span 45 paragraphs over 20 pages"); 6 ("Dynamic Data devotes more than 120 pages to its 13 counts of patent infringement."); 7 ("the 152 pages of Dynamic Data's FAC"); 9 ("Count III contains pages of additional facts).  Yet, though the FAC contains "copious" factual allegations about the HEVC standard, the HLS standard, or the accused products generally, it fails to connect those facts to key claim elements of the asserted patents.  Apple is not being "deliberately obtuse" when it states that the FAC does not place it on notice of the basis for Plaintiff's infringement claims.  Rather, without glue connecting Dynamic Data's generic factual allegations to key claim elements, Apple is forced to divine whether those connections even exist.

## ARGUMENT

Of the FAC's 502 paragraphs, nearly half (229 paragraphs) rely on "information and belief" allegations.  As set forth in Apple's Motion, "on information and belief" allegations are especially inappropriate where, as here, Dynamic Data's theory of infringement for a majority of the asserted patents is that they are standards-essential, and those standards are publicly available.  *See* Mot. [Dkt. 25] at 8–10.  In response, Dynamic Data argues that "pleading on 'information and belief' is appropriate ***when information is more accessible to the defendant***."  Resp. at 12–13.  That argument fails, because HEVC and HLS are publicly available standards equally accessible to both parties.

Dynamic Data also relies heavily on *Disc Disease* for the proposition that it need not allege specific facts to state a claim that is plausible on its face.  *See* Resp. at 4, 6, 14, 15, 17, and

22 (citing *Disc Disease Sols. Inc. v. VGH Sols., Inc.*, 888 F.3d 1256, 1260 (Fed. Cir. 2018)).

Dynamic Data's reliance on *Disc Disease* is misguided, because that case involved "simple

technology."  888 F.3d at 1260.  *Disc Disease* did not hold that specific factual allegations are

never necessary.  As this Court has explained:

> Cases involving tangible inventions and relatively straightforward claims may
> require less detail to state a claim and provide fair notice to the accused infringer.
> In contrast, cases involving more nebulous, less tangible inventions such as
> computer software methods may require a higher degree of specificity to provide
> proper notice to the defendant.

*Stragent, LLC v. BMW of N. Am., LLC*, No. 6:16-CV-446, 2017 WL 2821697, at *2 (E.D. Tex.

Mar. 3, 2017) (citation omitted), *report and recom. adopted*, 2017 WL 2832613 (E.D. Tex. Mar.

27, 2017).

## I.    The FAC fails to plead facts that state a claim for direct patent infringement

### A.    Dynamic Data does not plausibly plead that the HEVC-related patents are essential to the HEVC standard

Throughout its response, Dynamic Data repeatedly describes the relationship between the

HEVC standard and the asserted patent claims in vague and imprecise terms.  Resp. at 6 (FAC

"describes in detail how the standards *relate* to Dynamic Data's patents"); 8 (FAC "discuss[es]

how HEVC *fits* the context of the patent claims"); 13 (FAC "show[s] how Dynamic Data's

patents *relate* to the HVEC standard"); 13 (FAC "points to specific sections of the HEVC

standard that are *relevant*").  It is not sufficient for the patents and the HEVC standard to simply

be "related."  Rather, Plaintiff's theory of infringement is that:  (1) the asserted patents are

essential to the HEVC standard; (2) Apple's products support HEVC; and therefore (3) Apple's

products must necessarily practice the asserted patents.  *See e.g.* FAC [Dkt. 20] ¶¶ 213, 255, 293,

321, 374 ("by complying with the HEVC standard, Apple's devices . . . necessarily infringe" and

"[m]andatory sections of the HEVC standard require the elements required by certain claims of

the [asserted] patent").

The Federal Circuit has acknowledged, "in many instances, an industry standard does not provide the level of specificity required to establish that practicing that standard would always result in infringement." *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1327–28 (Fed. Cir. 2010). Furthermore, if "the relevant section of the standard is optional, [then] standards compliance alone would not establish that the accused infringer chooses to implement the optional section." *Id.* Therefore, the court continued:

> In these instances, it is not sufficient for the patent owner to establish infringement by arguing that the product admittedly practices the standard, therefore it infringes. In these cases, the patent owner must compare the claims to the accused products or, if appropriate, prove that the accused products implement any relevant optional sections of the standard. This should alleviate any concern about the use of standard compliance in assessing patent infringement. ***Only in the situation where a patent covers every possible implementation of a standard will it be enough to prove infringement by showing standard compliance***.

*Id.* at 1328 (emphasis added). Accordingly, the FAC must plead facts that give rise to a reasonable inference that the asserted patents are, in fact, essential to the HEVC standard. Fatal to Dynamic Data's infringement theory, however, the HEVC standard explicitly states that it does *not* govern how an encoder should make encoding decisions—e.g., determining a motion vector[1]—so long as whatever motion vector the encoder selects is represented in the bitstream in the specified manner.[2] *See* Mot. at 7–8.

---

[1]     Dynamic Data's assertion that "Apple's suggestion that Dynamic Data must prove in the pleadings that its patents are standards-essential (Mot. at 9) are not supported by law," Resp. at 14, evidences a fundamental misunderstanding of Apple's argument. Apple does not contend that Dynamic Data must *prove* anything. The point is that reference to the HEVC standard itself reveals the implausibility of Dynamic Data's allegations that the asserted patents are standard essential.

[2]     Dynamic Data argues that even if the HEVC standard applied only to decoding, it would still be relevant to infringement because a reasonable inference is "that the content of an HEVC-compliant bitstream and how motion vectors are to be represented in a bitstream are the same when encoding the bitstream as it is when decoding it." Resp. at 11. However, such an inference would not help Dynamic Data, as the asserted patents pertain to how motion vectors

In response, Dynamic Data contends that a court must accept its allegation that the HEVC standard governs encoding as true (*citing* FAC ¶ 317), even if that allegation contradicts the plain text of the HEVC standard itself.  *See* Resp. at 10.  The law does not require a court to set aside logic or common sense in that manner.  "In addition to accepting all of the factual allegations in the complaint as true, courts must consider the complaint in its entirety, as well as . . . documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."  *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 251 (5th Cir. 2009).  Here, the HEVC standard is such a document.

Moreover, when "an allegation is contradicted by the contents of an exhibit attached to the pleading, then [] the exhibit and not the allegation controls."  *U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 377 (5th Cir. 2004) (holding that medical records "qualified" plaintiff's allegations); *see also Stockwell v. Kanan*, 442 F. App'x 911, 913 (5th Cir. 2011) ("In case of a conflict between the allegations in a complaint and the exhibits attached to the complaint, the exhibits control.").[3]  Finally, "where an exhibit contradicts an assertion made in the complaint and eliminates any possible claim for relief, dismissal is appropriate."  *Sheppard v. Texas Dep't of Transp.*, 158 F.R.D. 592, 595 (E.D. Tex. 1994).  Because the HEVC standard explicitly refutes Plaintiff's theory of liability, its HEVC-related claims must be dismissed.[4]

---

are determined – not with how they are represented in a bitstream.

[3]    The HEVC Standard should be considered equivalent to an exhibit to the FAC because "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim."  *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–499 (5th Cir. 2000).

[4]    Dynamic Data argues that "Apple admits that the patented processes occur in an HEVC encoder," citing Apple's statement that "each of these patents is directed to the process of determining or estimating motion vectors, which are used in inter-frame predictive coding, a process which occurs at an HEVC encoder."  Resp. at 8.  Plaintiff's "interpretation" of Apple's statement is way off the mark.  That statement recognizes the unremarkable fact that HEVC encoders perform inter-frame predictive coding.  Dynamic Data cannot possibly assert that all

**B.    Dynamic Data does not plead facts supporting a plausible inference that the accused products practice key limitations of the asserted patents**

Next, Dynamic Data argues that requiring a nexus between its factual allegations and each element of the representative claim would improperly conflate the complaint with infringement contentions.  Resp. at 7.  However, this Court rejected a similar argument, stating: "Requiring [plaintiff] to plausibly plead a nexus between the AUTOSAR Standard and the asserted claims hardly equates to a demand that [plaintiff] provide product model numbers, infringement contention charts, or documents of any kind."  *Stragent*, 2017 WL 2821697 at *7.  Furthermore, this nexus must be established for each element of the representative claim.  *Diem LLC v. BigCommerce, Inc*., No. 6:17-CV-186, 2017 WL 9935521, at *2 (E.D. Tex. May 11, 2017) ("Plaintiff must put Defendant on plausible notice of the claims Defendant may need to defend against by identifying a representative claim from the [] Patent and providing facts sufficient to create a plausible inference that each element of the claim is infringed by the accused products").

Relying on *Audio MPEG*, Dynamic Data further argues that pleading direct infringement merely requires an allegation that "the accused products necessarily infringe the respective asserted patents because they encode video data pursuant to the HEVC standard."  Resp. at 12.  However, as this court explained in *Stragent*, the plaintiff in *Audio MPEG* "identified a formula common to both the asserted claims and the industry standard" and "explained how any file that complied with the industry standard must also comply with that common formula."  2017 WL 2821697 at *5 (distinguishing allegations in *Audio MPEG* which stated a claim from allegations at issue which did not).  The FAC fails to connect the dots between the relevant standard and at

---

encoders that perform inter-frame predictive coding infringe the asserted patents as inter-frame predictive coding and motion vectors long predated these patents.  To the contrary, the asserted patents only cover specific methods for determining motion vectors, which the HEVC standard, on its face, does not mandate.

least one key element of each claim Dynamic Data selected as representative.

For example, with respect to Court III, Dynamic Data does not explain how the HEVC standard– "add[s] a further candidate motion vector to the set of candidate motion vectors by calculating the further candidate motion vector on basis of a first motion vector and a second motion vector."  Mot. at 10.  In response, Dynamic Data points to ¶ 214 of the FAC, which states that "[i]n Advanced MV mode a list of candidates MV is created" and "only the best candidate index is transmitted in the bitstream."  Resp. at 8–9.  This response confirms rather than contradicts Apple's point, which is that while the FAC alleges facts showing that HEVC uses lists of candidate motion vectors, it alleges ***no facts*** supporting the inference that HEVC requires calculating a further candidate motion vector from that list.

With respect to Count VI, the FAC does not explain how the HEVC standard "determin[es] at least a most frequently occurring block-based motion vector;" "carr[ies] out a global motion vector estimation process;" or "appl[ies] the global motion vector as a candidate vector."  Mot. at 11.  In response, Dynamic Data points to provisions in the HEVC standard which explain that:  (1) "In Advanced MV mode a list of candidates MV is created (spatial and temporal candidates picked with a complex, probabilistic logic);" and (2) "Advanced motion vector prediction (AMVP) is used, including derivation of several most probable candidates based on data from adjacent PBs and the reference picture."  Resp. at 15–16.  From these passages, Dynamic Data jumps to the legal conclusion that "carrying out a global motion vector estimation process" occurs using several of the most probable candidate vectors.  *Id.* at 15. Yet, none of the cited passages refer to a global motion/estimation vector.  FAC ¶¶ 306–309. Furthermore, based on a figure that at most implies the calculation and application of a "further candidate motion vector," Dynamic Data jumps to the legal conclusion that HEVC requires

"applying the global motion vector as a candidate vector."  Resp. at 15.  Nothing in that figure suggests that the further candidate motion vector *is a global* motion vector.  FAC ¶ 308.  Simply put, Dynamic Data's legal conclusions that these key limitations are necessarily practiced by the HEVC standard are not plausible inferences that can be drawn from its factual allegations.

With respect to Count IX, Dynamic Data does not explain how the HEVC standard "determin[es] at least a second image block through which the motion vector assigned to the first image block at least partially passes."  Mot. at 11.  In response, Dynamic Data accuses Apple of "ignor[ing] key evidence" but without explaining how the provisions of the HEVC standard cited in paragraphs 379–85 disclose that limitation.  Resp. at 16.  Those paragraphs describe the unremarkable fact that HEVC uses motion compensation and motion vectors.  *See* note 4 above.

With respect to Count IV, the FAC does not set forth how the HLS standard requires "downloading on-screen display (OSD) data for generating an image on a display device" and "during a gap in said downloading of said OSD data, downloading an amount of overlay data for generating an overlay on said image."  Mot. at 12.  In response, Dynamic Data changes its infringement theory by suggesting that display data *is* the OSD data.  *Compare* FAC ¶ 242 ("The downloading of [display] data contains gaps wherein the on-screen display ('OSD') data is downloaded.  This data (e.g., captions, subtitles, etc.) is then rendered on the screen.") *with* Resp. at 17 ("For example, the FAC explains how overlay data is downloaded in a gap of the download of display data.").  Plaintiff's last minute revision of its infringement read underscores Apple's argument that the FAC fails to set forth a plausible infringement theory for the '918 patent.

With respect to Count XI, Dynamic Data fails to set forth how the HLS standard requires "receiving a transport stream comprising services," "filtering to select a data-element of a first one of the services," "switching from the first one of the services to a second one of the

services," and "filtering to select a second data-element of the second one of the services."  Mot.
at 13.  In response, Dynamic Data asserts that "[the] FAC contains detailed facts discussing these
["services" and "data-elements"] terms," without identifying what components in HLS
correspond to those terms.  Resp. at 18–19.  Curiously, rather than simply articulating the link
(which Dynamic Data suggests is so plainly evident that one has to be deliberately obtuse to miss
it), Dynamic Data instead spends the next half-page citing legal authority that distinguishes
pleading standards from infringement contentions.  *Id.*

As to Count VIII, Dynamic Data does not plead facts supporting a plausible inference
that the accused products "(b) process[] a color key from the pre-processed data to output
resulting data . . . wherein step (b) includes a step of substituting the color key with a pre-
selected color."  Mot. at 14–15.  In response, Dynamic Data points to a section from a user
guide, which states that users may "creat[e] a key using automatic sampling or the Sample Color
and Edges tools" or "skip those tools and create a key using Manual mode."  Resp. at 19–20.
From there, Plaintiff jumps to the legal conclusion that the accused products perform "a step of
substituting the color key with a pre-selected color."  Yet this inference is not plausible, as the
only factual allegations pertain to ***creating*** a color key.

With respect to Count II, the FAC does not plead facts supporting a plausible inference
that the accused products "scal[e] the key-only image to form a scaled key-only image," "scal[e]
the keyed image to form a scaled keyed image," and "merg[e] the scaled key-only image and the
scaled keyed image."  Mot. at 15–16.  In response, Dynamic Data points to paragraph 195 as
"showing the ability to resize [i.e., scale] various parts of the image [i.e., the key-only and keyed
image]."  Resp. at 21–22.  However, paragraph 195 discloses scaling the entire foreground image

(i.e., the keyed image).  Dynamic Data identifies no facts supporting an inference that the

accused products "scal[e] the key-only image to form a scaled key-only image."

Finally, as to Count X, Dynamic Data does not plead facts supporting a plausible

inference that the accused products contain an "auxiliary element."  Mot. at 16.  Beyond making

the blanket assertion that paragraphs 410–15 of the FAC "contains numerous facts showing how

auxiliary elements are used in the Apple products," Dynamic Data does not identify a single such

element.  Resp. at 23.

## II.     The FAC fails to plead facts that state a claim for indirect infringement

Dynamic Data's indirect infringement claims fail because it does not adequately plead

direct infringement.  Citing *In re Bill of Lading* and *Core Wireless*, Dynamic Data argues that its

induced infringement claims are adequately pled even if its direct infringement pleadings were

inadequate and even though pleading induced infringement requires a plaintiff to plead an act of

direct infringement.  Resp. at 23–24.  Dynamic Data's reliance on these cases is misplaced, as

both cases pertain to the *identification* of a *specific* direct infringer.  *In re Bill of Lading*

*Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012) ("This court

has upheld claims of indirect infringement premised on circumstantial evidence of direct

infringement by ***unknown parties***."); *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, No.

2:14-CV-911, 2015 WL 5786501, at *3 (E.D. Tex. Sept. 30, 2015) (holding that identification of

"end users" as direct infringers was sufficient).  Neither court held that an act of direct

infringement need not be pled with specificity.

Plaintiff's indirect infringement claims also fail because the FAC does not plausibly

allege Apple's specific intent for its customers to infringe.  Mot. at 17–19.  Specifically, the

allegations in the FAC boil down to the same formulaic allegations that:  (1) Apple provides the

accused products; (2) Apple provides instructional materials for the accused products; and

(3) these instructional materials cause end users to utilize the products in a manner that directly infringe the asserted patent.  *See* FAC ¶¶ 178, 199, 261, 282, 313, 341, 360, 393, 423, 449, 473, 499.  As this Court has stated:  "failing to allege any facts identifying, even at a basic level . . . how the instructions direct customers to use those products in an infringing manner, falls short of satisfying Rule 8's notice requirement."  *Core Wireless Licensing S.A.R.L. v. Apple Inc.*, No. 6:14-CV-752, 2015 WL 4910427, at *4 (E.D. Tex. Aug. 14, 2015).  Tellingly, the FAC identifies the exact same instructional materials for multiple patents, without identification of content tied to any particular feature or function.  Accordingly, the FAC's assertion that these materials show Apple's specific intent to induce infringement of all asserted patents is simply implausible.

### III.      The FAC fails to plead facts that state a claim for willful infringement

Dynamic Data's willful infringement claims fail because Dynamic Data:  (1) does not state a plausible claim for direct infringement; and (2) does not plead facts showing that Apple had pre-suit notice of the asserted patents (for pre-suit willful infringement).  Mot. at 19–20.  In response, Dynamic Data argues that its allegations that the asserted patents are well-known within the industry and they have been cited by Apple's competitors and suppliers suffice.  Resp. at 26–27.  However, that various ***third-parties*** may have been aware of the asserted patents does not give rise to a plausible inference that ***Apple*** had actual knowledge of the asserted patents.  Dynamic Data does not dispute that the FAC lacks any allegation that Apple has cited any of these patents.  *Id.*

### CONCLUSION

For the reasons set forth above, Apple respectfully requests that the Court dismiss the direct, indirect, and willful infringement claims of the FAC pursuant to Rule 12(b)(6).

Dated: March 21, 2019

Respectfully submitted,

By: */s/   Clayton C. James*
    Clayton C. James

Clayton C. James (CO #26110)
clay.james@hoganlovells.com
Aaron Stafford Oakley (CO #43299)
aaron.oakley@hoganlovells.com
Katherine A. Nelson (CO #46315)
katherine.nelson@hoganlovells.com
Katy L. Rankin (CO # 50133)
katy.rankin@hoganlovells.com
**HOGAN LOVELLS US LLP**
1601 Wewatta Street, Suite 900
Denver, CO 80202
Telephone:    (303) 899-7300
Facsimile:    (303) 899-7333

Melissa R. Smith (TX #24001351)
melissa@gillamsmithlaw.com
**GILLAM & SMITH, LLP**
303 South Washington Avenue
Marshall, Texas 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257

***Counsel for Defendant Apple Inc.***

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 21, 2019, I electronically filed the foregoing document using the Court's ECF system which will electronically serve the same upon all counsel of record.

*/s/  Clayton C. James*
Clayton C. James